**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **CIVIL ACTION NO.:** 3:26-CV-349-SA-RP

**JURY TRIAL DEMANDED**

**ANTHONY WASHINGTON** **DEFENDANT**

## COMPLAINT

This is an action by the United States of America against Anthony Washington to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon Washington's receipt of Paycheck Protection Program ("PPP") funds to which he was not entitled.

## JURISDICTION AND VENUE

1. This action arises under the FCA and the common law.

2. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3. The Court has personal jurisdiction over Defendant under 31 U.S.C. § 3732(a) because Defendant can be found, resides, or transacts business in this District, or has committed the alleged acts in this District.

4. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as Defendant can be found in this District and the subject transactions took place in the Northern District of Mississippi – specifically the Oxford Division.

**PARTIES**

5. Plaintiff, United States of America, guarantees and funds certain loans through the Small Business Administration ("SBA").

6. Defendant, Anthony Washington, was a resident of Tallahatchie County, Mississippi at the time of the loan, and purports to be a resident of Tallahatchie County, Mississippi, at the filing of this civil action – both within this District and Oxford Division.

**The Paycheck Protection Program**

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

8. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

9. A PPP loan application was processed by a participating lender. If a PPP loan

application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

11. The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

a. That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

b. That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

c. That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d. That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non- payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the Paycheck Protection Program;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k. That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

## **The False Claims Act**

12. The FCA provides, in pertinent part, that any person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

13. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,946.00 to a maximum of $27,894.00. 28 C.F.R. § 85.5.

14. For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

(i) has actual knowledge of the information;

(ii) acts in deliberate ignorance of the truth or falsity of the information; or

(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

15. Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

16. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

## Allegations

17. It is a violation of the FCA to knowingly obtain an SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules, and to subsequently obtain forgiveness of such loan. Defendant, Anthony Washington, was individually involved in obtaining one PPP loan (with the assistance of an unnamed individual) and subsequently involved in obtaining forgiveness of the subject loan, in violation of the FCA.

18. On or about My 5, 2021, Defendant Anthony Washington was approved and received a PPP loan (loan number 7019338901) in the amount of $20,833.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). Upon information and belief, in the PPP loan application, Anthony Washington misrepresented his annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant was eligible. This misrepresentation caused Defendant to receive loan proceeds well in excess of what he would be entitled, if any at all.

19. Defendant knowingly used the PPP loan funds for unauthorized purposes beyond what was permitted by the terms of the loan and the statute.

20. Defendant knowingly misrepresented his use of the funds on the forgiveness application submitted for the PPP loan. Based upon the false representations, the SBA forgave the subject loan on or about August 25, 2021 in the amount of $20,896.08.

21. The SBA paid $2,500.00 in processing fees to Bank 1 in connection with the PPP loan disbursed to Anthony Washington.

22. On or about August 28, 2026 an Investigator with the affirmative civil enforcement unit of the United States Attorney's Office for the Northern District of Mississippi spoke with Defendant Anthony Washington via telephone.

23. In sum and substance, Anthony Washington relayed the following during the interview:

a. Anthony Washington purported to operate an landscaping services business - NAICS 561730 – in the northern Mississippi area.

b. Washington provided no explanation as to the amount of his income and agreed he did not earn the requisite income during the covered period that would yield the amount of the loan received. In order to receive a loan of $20,833.00, the maximum loan amount guidelines required Washington to have total eligible payroll costs of his side business of at least $100,000.00 for the twelve months preceding the loan. Anthony Washington has no proof of such eligible payroll costs;

c. Anthony Washington confirmed that he electronically signed the PPP application and submitted it to Bank 1 and made all necessary certifications; and

d. Washington confirmed that he did not spend the money in accordance with the loan requirements.

24. Upon information and belief, false statements and documents were submitted to Bank 1 which misrepresented the amount of eligible payroll for Anthony Washington's use of the loan proceeds. These false statements in the loan application and forgiveness application were material to the payment of money by Bank 1 that was then reimbursed by the SBA, causing damages to the United States.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

**COUNT I**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

25. Washington knowingly requested and obtained one PPP loan for an amount he was not entitled to, in violation of the PPP Rules.

26. Washington knowingly requested and received forgiveness of the PPP loan, despite his failure to comply with the PPP Rules.

27. By virtue of these false claims, the United States was damaged for the full amount of the PPP loan and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

**COUNT II**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Making or Using False Records or Statements**

28. Washington knowingly submitted one PPP loan application that contained misrepresentations regarding his payroll costs and intended use of PPP funds.

29. Washington subsequently knowingly submitted a PPP forgiveness application that misrepresented his use of the PPP funds and eligibility for loan forgiveness.

30. By virtue of these false statements, the United States was damaged for the full amount of the loan and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

**PRAYER FOR RELIEF AND JURY DEMAND**

The United States requests that the Court enter judgment against Anthony Washington and grant the following relief:

(a) On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for (1) the $20,896.08 loan plus one percent interest applied from the date of the loan and (2) the processing fees paid by the United States to Bank 1, together with the maximum civil penalties allowed by law;

(b) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

(c) granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

Respectfully submitted this the 3rd day of November, 2026.

Scott F. Leary
United States Attorney

By: John E. Gough, Jr.(MSB #10351)
Assistant United States Attorney
900 Jefferson Avenue
Oxford, Mississippi 38655-3608
t: 662.234.3351
e: john.gough@usdoj.gov